UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LANA PATRICK,

        Plaintiff,

v.                              CASE NO. 3:24-cv-580-WWB-SJH

OFFICER GRAHAM, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before me on Defendants' Motion to Dismiss Complaint with Prejudice ("Motion"), Doc. 16, and Plaintiff's response in opposition thereto ("Response"), Doc. 18. For the reasons below, I respectfully **recommend** the Motion be **granted** to the extent stated herein.

### I.    Background

Plaintiff, proceeding *pro se*, filed a Complaint for Violation of Civil Rights ("Complaint") against Defendants, two Duval County School Board ("DCSB") officers, seeking relief under 42 U.S.C. § 1983 ("§ 1983"). Doc. 1. All claims stem from the efforts of Plaintiff, "an independent Journalist/Activist[,]" to attend a DCSB meeting on March 12, 2024. *See id.* at ¶¶ 1, 4-22. Count One alleges Defendants violated Plaintiff's First Amendment rights by removing and trespassing her from the building where the meeting was held. *See id.*, ¶¶ 15-16. Count Two alleges the same conduct was an unlawful "prior restraint" that restricted her "ability to gather

information to disseminate to the public." *See id.*, ¶¶ 17-18. Count Three alleges Defendant Graham violated Plaintiff's Fourth Amendment rights by using excessive force to unlawfully remove her from the building. *See id.*, ¶¶ 19-20. Count Four alleges Defendant Wilson violated Plaintiff's First Amendment rights by having a news report from Plaintiff removed from youtube. *See id.*, ¶¶ 21-22. Exhibit 1 to Plaintiff's Complaint is a video file contained on a flash drive that, for purposes of the Motion, is incorporated into the Complaint and depicts most of the events at issue ("the Video"). *See* Doc. 1 at ¶¶ 6-11, 13-14 & Ex. 1; *see also* Doc. 16 at 2, 6-7.[1]

Defendants move for dismissal of all claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule(s)"), arguing that all claims fail to state a plausible claim for relief and that they are entitled to qualified immunity. *See generally* Doc 16.[2]

## II.   Standard

A pleading stating "a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction …; (2) a short and plain statement

---

[1] The Video generally depicts the events relating to the allegations of Counts One, Two, and Three of the Complaint; it does not depict additional events relating to Count Four.

[2] In addition to Rule 12(b)(6), Defendants also cite Rules 8(a)(2) and 10(b). I discern no general and non-substantive pleading deficiencies, so I will consider any arguments under Rules 8 and 10 in connection with the substantive arguments under Rule 12(b)(6). In a footnote, Defendants also state that "[t]here is no indication that each individual Defendant was properly served with the Complaint; only the DCSB was apparently served." Doc. 16 at 1 n.1. Paragraph seven of the Motion similarly states in passing that "[t]he individual Defendants have not been properly served" but then proceeds to argue about the sufficiency of the allegations against them. *See id.* at 3. These fleeting and undeveloped contentions contain no record citations, no citations of legal authority, and no arguments. *See id.* Nor do Defendants invoke Rule 12(b)(5). *See id.* at 1. Accordingly, it appears Defendants have waived any challenge to service of process. *See* Rule 12(h)(1); *see also Terrell v. Sec'y, Dep't of Veterans Affs.*, 98 F.4th 1343, 1356 (11th Cir. 2024). Regardless, Defendants' substantive arguments are meritorious, which also obviates the need to consider their argument that Plaintiff lacks a basis to seek punitive damages.

of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought …." Fed. R. Civ. P. 8(a); *see also Gamble v. Gamble*, No. 8:09-cv-369-T-30TGW, 2009 WL 580323, at *1 (M.D. Fla. Mar. 6, 2009). In addition, a party must state its claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b); *see also Meide v. Pulse Evolution Corp.*, No. 3:18-cv-1037-J-34MCR, 2019 WL 4918264, at *2 (M.D. Fla. Oct. 4, 2019); *Palmer v. Albertson's LLC*, 418 F. App'x 885, 889 (11th Cir. 2011) (quotation omitted).

A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Rule 8(a) demands "more than an unadorned, the defendant unlawfully harmed me accusation." *Id.* The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Courts accept "all factual allegations in the complaint as true" but "need not apply this rule to legal conclusions." *Anthony v. Am. Gen. Fin. Servs., Inc.*, 626 F.3d 1318, 1321 (11th Cir. 2010).

In reviewing the sufficiency of a pleading, consideration is limited to the complaint and exhibits attached thereto, except that the Court may also consider

documents under the "incorporation-by-reference doctrine" or that are subject to judicial notice. *See Swinford v. Santos*, --- F. 4th ---, No. 22-13675, 2024 WL 4661097, at *5 (11th Cir. Nov. 4, 2024); *Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1276 (11th Cir. 2023). Here, the Video is attached as an exhibit to the Complaint and incorporated by reference therein, and its authenticity is not challenged, so it is considered in addressing the Motion.[3]

In ruling on a motion to dismiss, the facts alleged in the pleading are taken as true, drawing all reasonable inferences in the plaintiff's favor. *Jackson v. City of Atlanta, Ga.*, 97 F.4th 1343, 1350 (11th Cir. 2024). Where incorporated video footage "'is clear and obviously contradicts the plaintiff's alleged facts,'" the Court accepts "'the video's depiction instead of the complaint's account," and the facts are viewed "'in the light depicted by the video.'" *Id.* at 1350 (citation omitted). Where there is not a clear and obvious conflict, however, the facts alleged in the complaint are accepted. *See id.* at 1358-59. The Court must also "'construe all ambiguities in the video footage in favor of the plaintiff.'" *See id.* at 1350 (citation omitted). *Pro se* pleadings are construed liberally and held to a less stringent standard that is applied to pleadings drafted by

---

[3] The incorporation-by-reference doctrine applies to an item that is "(1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024); *see also Swinford*, 2024 WL 4661097, at *5. The doctrine is not limited to written instruments and, where applicable, may also apply to video footage. *See Swinford*, 2024 WL 4661097, at *5; *Johnson*, 107 F.4th at 1298; *Baker*, 67 F.4th at 1276-77; *see also Lewis v. Reyes*, No. 23-12171, 2024 WL 1155813, at ** 1-2 & n.1 (11th Cir. Mar. 18, 2024). It appears that in certain place(s) the Video may have been spliced to cut (presumptively immaterial) footage. *See, e.g.*, Video at 1:13-1:17, 3:26-3:30, 5:19-5:47, 11:03-11:08, 11:22-11:44. Because both parties rely on the Video and neither challenges its authenticity or suggests anything material was cut or not captured, it is appropriately considered. *See Swinford*, 2024 WL 4661097, at *5; *Johnson*, 107 F.4th at 1300.

lawyers, but courts still "cannot act as de facto counsel or rewrite an otherwise deficient pleading to sustain an action." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020); *see also LaCroix v. W. Dist. of Ky*, 627 F. App'x 816, 818 (11th Cir. 2015).[4]

### III.    Facts

Applying the foregoing standard, for purposes of the Motion, the facts are as follows:

Plaintiff attempted to enter the DCSB building where the board meeting was held. *See* Video at 0:01-0:14. She was asked to produce identification, which she was told was a standard requirement for entry consistent with a sign posted at the entry point. *Id.* at 0:14-0:26. She said she did not have identification. *Id.* at 0:26-0:30. She and Defendant Graham discussed the issue for some time. *Id.* at 1:18-11:24. Throughout this encounter, Defendant Graham remained calm and professional, even as Plaintiff at times became argumentative. *Id.*

Eventually, Defendant Wilson arrived. *Id.* at 11:47. After a brief discussion, he ultimately allowed Plaintiff to enter the building and meeting without producing identification. *Id.* at 12:42-13:04. Upon entering the meeting, Plaintiff walked toward the front of the room and stood in the aisle filming. *Id.* at 14:39-14:55. All other visible attendees at the meeting were sitting. *Id.* Defendant Wilson calmly, quietly, and repeatedly, asked Plaintiff to be seated. *Id.* at 15:11-15:30. Though Defendant Wilson

---

[4] Unpublished opinions are not binding precedent; however, they may be cited when persuasive on a particular point. *See United States v. Futrell*, 209 F.3d 1286, 1289–90 (11th Cir. 2000); 11th Cir. R. 36–2.

had said nothing about filming—only asking Plaintiff to sit rather than stand in the aisle—she refused and argued, in a louder voice, insisting that she was permitted to film the meeting. *Id.* at 15:11-15:36. Defendant Wilson, calmly talking in a hushed and nondisruptive tone, continued to try to reason with Plaintiff, who continued to argue in a non-hushed voice. *Id.* at 15:36-16:04. During this time Plaintiff is clearly observed still standing in the aisle and raising her voice, with Defendant Wilson attempting to reason with her, asking her to come to the back of the room to continue the discussion with the media relations supervisor who was seated in a rear row. *Id.* Plaintiff refused. *Id.* Finally, with Plaintiff still standing in the aisle, raising her voice, and having refused repeated requests to be seated or continue the discussion in the back of the room, Defendant Graham, at Defendant Wilson's request, calmly escorted Plaintiff out of the building as she protested her removal. *Id.* at 16:05-16:53; *see also* Complaint, at ¶ 14 (alleging Plaintiff was removed "because [she] wouldn't listen to Sgt [W]ilson's unlawful orders to sit down or talk to the media guy"). In the process, Defendant Graham guided her and had his hands on her person, but with minimal physical contact. *Id.*

Once Plaintiff was outside the building, she was told by Defendant Wilson that she was free to leave but that she was not permitted to reenter the building for the

meeting and had been removed for her disruptive behavior and refusal to follow instructions. *Id.* at 16:57-17:42.[5] Plaintiff eventually left the location. *Id.* at 19:15-19:16.

## IV.   Law and Discussion

"To state a claim under section 1983, [Plaintiff] must allege that an act or omission, committed by a person acting under color of state law, deprived [her] of a right, privilege, or immunity secured by the Constitution or a federal statute." *A.W. by & Through J.W. v. Coweta Cnty. Sch. Dist.*, 110 F.4th 1309, 1315 (11th Cir. 2024). "To defeat a qualified immunity defense on a motion to dismiss, the operative complaint must plausibly plead that the defendant violated the plaintiff's federal rights and those rights were clearly established." *Jackson*, 97 F.4th at 1350;[6] *see also Leslie v. Hancock Cnty. Bd. of Educ.*, 720 F.3d 1338, 1343 (11th Cir. 2013) ("A motion to dismiss a complaint on qualified immunity grounds will be granted if the complaint fails to allege the violation of a clearly established constitutional right.") (quotation and internal quotation marks omitted). Thus, to survive a motion to dismiss based on qualified immunity, Plaintiff must sufficiently allege that Defendants violated her constitutional right(s) and that the right involved was clearly established at the time of

---

[5] For example, Defendant Wilson advised (as the previously referenced footage confirms) that Plaintiff was asked to be seated, but she insisted that it was a public meeting so she was not required to do so. *Id.* at 16:57-17:02.

[6] A qualified immunity defense also requires a defendant to be acting in a discretionary capacity; Plaintiff makes no argument that Defendants here were not. *See id.* at 1350 n.3; *see also Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1144 (11th Cir. 2017) ("A government official acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties and (2) within the scope of his authority.").

the alleged misconduct, which elements may be addressed in either order. *See Leslie*, 720 F.3d at 1345.

   "Qualified immunity protects all but the plainly incompetent or those who knowingly violate federal law; it does not extend to one who knew or reasonably should have known that his or her actions would violate the plaintiff's federal rights." *Gaines v. Wardynski*, 871 F.3d 1203, 1207 (11th Cir. 2017). Whether a constitutional violation is clearly established must be considered "in light of the specific context of the case, not as a broad general proposition." *Leslie*, 720 F.3d at 1345 (quotation and internal quotation marks omitted); *see also Gaines*, 871 F.3d at 1208. The "dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable [state official] that his conduct was unlawful in the situation he confronted." *Leslie*, 720 F.3d at 1345 (quotation and internal quotation marks omitted). In other words, Defendants must have "*fair warning* that their alleged treatment of" Plaintiff was unconstitutional. *Id.* (quotation and internal quotation marks omitted). Law can be clearly established only by the United States Supreme Court, the Eleventh Circuit, or the highest court of the state where the case arose. *Id.*; *see also Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1344 (11th Cir. 2016).

   A plaintiff must show law was clearly established in one of three ways. *See Leslie*, 720 F.3d at 1345. "First, if judicial precedents in an area are tied to particular facts," the plaintiff "must 'show that a materially similar case has already been decided.'" *Id.* (quotation omitted). "Second, if judicial precedents are not tied to

particular facts," the plaintiff "may 'point to a broader, clearly established principle [that] should control the novel facts [of the] situation.'" *Id.* (quotation omitted). Under this second "approach, 'the principle must be established with obvious clarity by the case law so that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted.'" *Id.* (quotation omitted). Third and finally, the case may involve conduct that so obviously violates the Constitution that no prior case law is necessary. *See id.* at 1346. The second and third methods for showing clearly established law— "generally known as 'obvious clarity' cases"—are rare and exceptional. *See Gaines*, 871 F.3d at 1209. "It is particularly difficult to overcome the qualified immunity defense in the First Amendment context." *See id.* at 1210; *see also Dayton v. Brechnitz*, No. 2:20-cv-307-SPC-MRM, 2021 WL 5163225, at *8 (M.D. Fla. Nov. 5, 2021).

### a.    Count One

Count One allege Defendants violated Plaintiff's First Amendment rights by trespassing her from the building where the school board meeting was held. *See* Doc. 1 at ¶¶ 15-16. Though expressly based on Defendants trespassing Plaintiff, in caution and to liberally construe Plaintiff's *pro se* pleading, and based on certain arguments in her Response, I will consider whether Defendants violated Plaintiff's clearly established First Amendment rights both in (i) delaying her entry into the building

when initially asking for (though ultimately not insisting on) identification; and (ii) eventually removing her from the building.[7]

"The government's ability to impose restrictions on speech varies depending on the nature of the forum[,]" of which there are four recognized "types: the traditional public forum, the designated public forum, the limited public forum, and the nonpublic forum." *McDonough v. Garcia*, 116 F.4th 1319, 1322, 1325 (11th Cir. 2024) (en banc). Content restrictions in a traditional public forum or a designated public forum are reviewed under strict scrutiny, whereas regulations are permissible in a limited public forum or nonpublic forum so long as they are reasonable and viewpoint neutral. *See id.* In short, restrictions in a limited public forum and a nonpublic forum are governed by the same test and are lawful if viewpoint neutral and reasonable in light of the purpose served by the forum, even if not narrowly tailored to serve a government interest. *See id.* at 1322-28 & n.4. Defendants argue that the school board meeting was a limited public forum, which Plaintiff does not address or dispute, *see* Doc. 16 at 8; Doc. 18; *see also Moms for Liberty - Brevard Cnty., FL v. Brevard Pub. Sch.*, 118 F.4th 1324, 1331 (11th Cir. 2024); *Huggins v. Sch. Dist. of Manatee Cnty.*, No. 8:22-cv-1183-WFJ-TGW, 2022 WL 4095065, at *5 (M.D. Fla. Sept. 7, 2022) (agreeing that "school board meetings that include periods for public comment are generally considered limited public forums").

---

[7] The Video gives no indication of any formal trespass or future ban. Nor does Plaintiff allege that she was banned or otherwise prevented from later reentering the building or attending future meetings. I consider only what Plaintiff has plausibly alleged and the Video shows—that she was *temporarily* removed from the building and the one meeting, not that she was indefinitely trespassed.

First, to the extent Plaintiff alleges Defendants violated her clearly established constitutional rights by initially asking for her identification before allowing her entry into the building or meeting (though eventually allowing her to enter without producing identification), I disagree.

Plaintiff was told the identification requirement was a policy, which is consistent with a sign observable in the Video. *See* Complaint, ¶ 6; Video at 0:09-0:30. There is no indication or allegation that Plaintiff alone was singled out for identification, though, upon her protest, she was eventually allowed to enter without proof of identification. *See* Complaint, ¶ 10.

Plaintiff points to no clearly established law that the temporary delay and request for identification violated her federal rights. She instead argues (i) requiring identification is inconsistent with a Florida Attorney General opinion addressing the Florida Sunshine Law; and (ii) it "could be seen as a prior restraint" to the extent it gives the government "'unbridled discretion to limit access to a particular public forum.'" *See* Doc. 18 at 2 (citing Florida Attorney General Opinion 2005-13 and *quoting Cooper v. Dillon*, 403 F.3d 1208, 1215 (11th Cir. 2005)). These arguments lack merit.

Preliminarily, reliance on the Florida Attorney General Opinion is doubly deficient as it is not the United States Supreme Court, Eleventh Circuit, or Florida Supreme Court, and thus cannot clearly establish law for qualified immunity purposes. *See Jacoby*, 835 F.3d at 1344; *Leslie*, 720 F.3d at 1345. But even if it could, Plaintiff's Section 1983 claim must be based on violation of a *federally* protected right; even a

clearly established violation of state law is not actionable under § 1983. *See Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) ("Section 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right."); *see also Lovette v. Paul*, No. 08-80940-CIV-MARRA, 2009 WL 10674216, at *1 (S.D. Fla. May 29, 2009) ("Any claim that the defendant failed in her duty to obey the Florida Public Records Act does not state a claim of a violation of federal constitutional law cognizable in a § 1983 action."), *report and recommendation adopted*, 2009 WL 10674218 (S.D. Fla. June 30, 2009).

Next, Plaintiff's "prior restraint" with "unbridled discretion" argument is difficult to decipher. A request for identification does not appear to leave officials with any, let alone unbridled, discretion. Regardless, Plaintiff's framing of the issue is effectively a concession. That she contends identification "could be seen as prior restraint" is far short of her burden to show "clearly established" law. *See* Doc. 18 at 2; *see also Gaines*, 871 F.3d at 1208; *Leslie*, 720 F.3d at 1345. And the sole case she cites in support of her argument, *Cooper*, held that a particular statutory scheme was *not* a prior restraint. *See Cooper*, 403 F.3d at 1215-16. Neither it, nor the case law it cites about a National Park Service licensing scheme, approach clearly establishing that asking Plaintiff for identification subjected her to a Constitutionally unlawful prior restraint. *See id.*; *see also Gaines*, 871 F.3d at 1208; *Leslie*, 720 F.3d at 1345.

Indeed, the little (albeit nonbinding and not clearly established) law suggests *against* any Constitutional violation. Identification is viewpoint neutral and can be

considered a reasonable restriction to ensure order, decorum, and safety. *Cf. Huggins*, 2022 WL 4095065, at *10 ("The practices identified by Plaintiff, such as an increase in security measures and a requirement that individuals planning to make a public comment sign up in advance, are not content-based or viewpoint-based restrictions on speech.") (internal citation omitted). For example, photo identification is required to enter courthouses and other federal buildings. *See Torres v. Pasco Cnty. Bd. of Cnty. Commissioners*, No. 8:21-cv-892-TPB-JSS, 2022 WL 1121041, at *1 (M.D. Fla. Apr. 14, 2022). And though "some individuals have filed suit, insisting on a constitutional right to enter a federal courthouse without providing identification, these challenges have been soundly rejected." *Id.* (citation omitted); *see also Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1355 & n.5 (N.D. Ga. 2022) ("A school board meeting is much more analogous to a courthouse than it is to a school full of minors, from a First Amendment perspective.").[8] To be sure, there may be some security measures that are more reasonable for a courthouse than a school board. Regardless, drawing a line is unnecessary; it suffices that no clearly established line has been drawn. *See Dayton*, 2021 WL 5163225, at *8 (finding it unnecessary "to settle any constitutional questions" because the discussion "highlights Plaintiffs have not met their burden to show [the defendant] violated a clearly established right").

---

[8] This analogy is apt in part because courthouses are often viewed as nonpublic forums, which are subject to the same First Amendment standards as limited public forums. *See id.* at 1355 n.5; *see also McDonough*, 116 F.4th at 1322, 1325 & n.4.

Plaintiff's allegations concerning her removal from the meeting fare no better. As discussed in the facts above, Plaintiff was removed from the meeting only after she (i) refused multiple instructions to sit down rather than stand in the aisle; and (ii) became disruptive, arguing against the instruction to be seated and refusing instructions to continue the conversation in the back of the room with media relations. Plaintiff effectively concedes as much (as she must; the actions are clearly depicted in the Video). *See, e.g.*, Doc. 1 at ¶ 14 (alleging Plaintiff was removed because she "wouldn't listen to Sgt [W]ilson's unlawful orders to sit down or talk to the media guy"); Doc. 18 at 2 ("I was under no obligation to either sit or talk to the media person, I was also under no obligation to listen to the officer[']s unlawful commands.").

Plaintiff cites no authority clearly establishing that she was permitted to stand in the aisle, refuse to take a seat, and raise her voice while arguing in the front of the room of an ongoing meeting.[9] Rather, Plaintiff appears to complain of, and admit her failure to comply with, lawful viewpoint neutral and reasonable regulations to uphold order and decorum. *See McDonough*, 116 F.4th at 1322, 1325. Again, the law suggests *against* any Constitutional violation and at minimum confirms no clearly established one. *See Huggins*, 2022 WL 4095065, at *5 ("Though Plaintiff contends [his removal from a school board meeting was directed] based on his viewpoint or the content of his speech, he offers no support for this conclusory allegation. The Amended Complaint expresses that, prior to any public comment portion of the meeting,

---

[9] The cases cited by Plaintiff are nonbinding, readily distinguishable, or both.

Plaintiff was asked to leave because he failed to take a seat."); *see also Dayton*, 2021 WL 5163225, at *7 ("The law on decorum restrictions at government meetings is inherently fact dependent.").[10]

In short, for the reasons discussed above, I discern no Constitutional violation as to Plaintiff's allegations, and the clear Video footage, concerning Count One. Assuming *arguendo* there was any violation, I discern no clearly established violation. Thus, as to Count One, Plaintiff fails to state a claim, and Defendants are entitled to qualified immunity.

### b.    Count Two

Count Two alleges that the same conduct underlying Count One constituted an unlawful "prior restraint" that restricted Plaintiff's "ability to gather information to disseminate to the public." *See* Doc. 1 at ¶¶ 17-18. This claim fails for the same reasons discussed above. First, as discussed above, asking Plaintiff for identification did not subject her to a prior restraint in violation of clearly established law. Nor did removing her from the meeting for her disruption and admitted refusal to leave the aisle and be seated, which does not even appear to be properly categorized as a potential prior restraint. *See Dayton*, 2021 WL 5163225, at *2. For the reasons set forth above as to

---

[10] Both *Huggins* and *Dayton* applied, among other authority, prior Eleventh Circuit precedent from *Rowe v. City of Cocoa, Fla.*, 358 F.3d 800 (11th Cir. 2004). *See Huggins*, 2022 WL 4095065, at **5, 10; *Dayton*, 2021 WL 5163225, at **6, 8. *Rowe* had required that restrictions at a limited public forum be content-neutral and narrowly tailored to serve a significant public interest. *See Huggins*, 2022 WL 4095065, at *5 (citing *Rowe*, 358 F.3d at 802-03). As discussed above, the Eleventh Circuit, sitting *en banc*, has since clarified that *Rowe* was overly restrictive and that restrictions in a limited public forum are lawful so long as reasonable and viewpoint neutral. *See McDonough*, 116 F.4th at 1326-28. In other words, current Eleventh Circuit precedent on regulations in a limited public forum is even more permissible than the law applied in *Huggins* and *Dayton*.

Count One, Plaintiff fails to state a claim as to Count Two, and Defendants are entitled to qualified immunity.

    **c.   Count Three**

Count Three alleges Defendant Graham violated Plaintiff's Fourth Amendment rights by using excessive force to unlawfully remove her from the building. *See* Doc. 1 at ¶¶ 19-20. "To assert a Fourth Amendment claim based on the use of excessive force, [a plaintiff] must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable." *Troupe v. Sarasota Cnty., Fla.*, 419 F.3d 1160, 1166 (11th Cir. 2005). Plaintiff's Complaint fails to plausibly allege either element and further fails to plausibly allege a clearly established violation sufficient to overcome qualified immunity.

"A 'seizure' under the Fourth Amendment occurs 'when the officer, by means of physical force or show of authority, terminates or restrains [a person's] freedom of movement, through means intentionally applied.'" *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012) (quotation omitted). Thus, a person is seized under the Fourth Amendment "'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [s]he was not free to leave.'" *Id.* (quotation omitted); *see also United States v. Knights*, 989 F.3d 1281, 1288 (11th Cir. 2021) (explaining that "the existence of a seizure is an objective question" that asks "whether a reasonable person would have believed he was not free to leave in the light of the totality of the circumstances"). Here, Plaintiff does not plausibly allege, nor does the Video depict, that she was ever seized and prevented

from leaving; nor, assuming she was seized, was any seizure clearly established. *See, e.g.*, *Huggins*, 2022 WL 4095065, at *5 ("Though Plaintiff claims that he was unlawfully seized in violation of the Fourth Amendment, he does not explain how a school board official illegally seizes an individual by merely directing his removal from a meeting. There is no indication that [the official] detained Plaintiff or otherwise restrained Plaintiff's freedom of movement. Plaintiff has therefore failed to show that [she] violated any clearly established right protecting against illegal seizures.") (internal citation omitted); *Rauen v. City of Miami*, No. 06-21182-CIV, 2007 WL 9702285, at *2 (S.D. Fla. June 7, 2007) ("Where no search or seizure has taken place (or, in this case, where it is not 'clearly established' that a search or seizure has taken place), an excessive force claim under the Fourth Amendment will not lie.").[11]

Even assuming there was a seizure, however, the Video belies any contention excessive force was used. To the contrary, the Video shows minimal conduct incidental to Plaintiff's removal from the meeting and refusal to follow instructions, which, as discussed above, was lawful. *See Merricks v. Adkisson*, 785 F.3d 553, 560 (11th Cir. 2015) ("'Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'") (quotation omitted); *see also*

---

[11] In some circumstances, an excessive force claim can lie, even absent a seizure, under the Fourteenth Amendment (but not the Fourth Amendment). *See Willis v. Mock*, 600 F. App'x 679, 685 (11th Cir. 2015). Plaintiff does not purport to bring any such claim. Nor could she, as it protects only against "arbitrary and oppressive uses of force" constituting "the most egregious official conduct" that shocks the conscious. *See id.* That standard is higher than the excessive-force standard under the Fourth Amendment, which Plaintiff fails to satisfy even assuming a seizure. *See id.*

*Huebner v. Bradshaw*, 935 F.3d 1183, 1191 (11th Cir. 2019). Even if the minimal contact was excessive, which it was not, no law clearly established that it was excessive, and Defendant Graham is entitled to qualified immunity. *See Merricks*, 785 F.3d at 560, 565.

### d.   Count Four

Count Four alleges Defendant Wilson violated Plaintiff's First Amendment rights by having a news report from Plaintiff removed from youtube. *See* Doc. 1 at ¶¶ 21-22. Plaintiff alleges no facts in support of this claim. *See id.* She alleges merely that "Sgt Wilson was at all time[s] acting under color of law when he put a privacy strike on my news report and having it removed from youtube" and that in so doing he "engaged in a form of prior restraint known as subsequent punishment because he did not want his actions to be seen." *See id.*

Unaccompanied by video evidence, these bare allegations fail to plausibly allege a claim for relief or give fair notice of what Plaintiff alleges. It is unclear what actions of Defendant Wilson underlie this claim, including what Defendant Wilson did to allegedly have a video removed, how he did so, and in what context. Plaintiff's vague and conclusory allegations of a "privacy strike" are neither clear nor entitled to a presumption of truth. *See Anthony*, 626 F.3d at 1321. Nor is the conclusory allegation that Defendant Wilson was acting "under color of law" entitled to a presumption of truth.[12] *See id.*; *see also Moskovits v. Mercedes-Benz USA, LLC*, No. 22-10664, 2022 WL

---

[12] In this respect, Count Four differs from the others, which are accompanied by the Video showing Defendants' actions within their capacities and authorities as officers. Not all acts by state

17259158, at *3 (11th Cir. Nov. 29, 2022); *Davis v. Williams*, No. 7:17-CV-73 (HL), 2018 WL 11214875, at *2 (M.D. Ga. Aug. 6, 2018), *report and recommendation adopted*, 2018 WL 11214871 (M.D. Ga. Oct. 30, 2018).[13] Plaintiff must instead plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; her "unadorned, the defendant unlawfully harmed me accusation" is insufficient. *See Iqbal*, 556 U.S. at 678. Thus, Count Four fails to plausibly state a claim for relief.

### e.   Dismissal With or Without Prejudice

For the reasons herein, all claims alleged in the Complaint are due to be dismissed. Defendants seek dismissal with prejudice. *See* Doc. 16 at 1, 12. Before dismissing claims with prejudice, a *pro se* party must be afforded at least one chance to amend her pleading if a more carefully drafted complaint might state a claim. *See Muhammad v. JPMorgan Chase Bank, NA*, 567 F. App'x 851, 853-55 (11th Cir. 2014). But dismissal with prejudice and without leave or opportunity to amend is appropriate if amendment would be futile. *See id.*; *see also Cooper v. Countrywide Home Loans*, 724 F.

---

employees are under color of law; "'acts of officers in the ambit of their personal pursuits are not done under color of law.'" *Charudattan v. Darnell*, 834 F. App'x 477, 482 (11th Cir. 2020) (quotation omitted). Plaintiff does not allege that the youtube video was removed through an exercise of authority, and her allegation suggests Defendant Wilson may have instead wished it removed purely as a private individual. *See id.* at 479, 482 (holding claim alleging violation of free speech rights by deleting and blocking comments from Facebook page failed for lack of action under color of law where Facebook page was privately owned and monitored by sheriff's deputies while off-duty).

[13] Additionally, Plaintiff's allegation that Defendant Wilson "engaged in a form of prior restraint known as subsequent punishment" is neither entitled to a presumption of truth nor readily discernable. Doc. 1 at ¶ 22. To the contrary, Plaintiff appears to conflate distinct concepts. *See Alexander v. United States*, 509 U.S. 544, 553-54 (1993) ("[O]ur decisions have steadfastly preserved the distinction between prior restraints and subsequent punishments.").

App'x 741, 744 (11th Cir. 2018). Such is the case here as to Counts One, Two, and Three of the Complaint. The events at issue in such counts are clearly depicted in the Video and thus cannot be cured by a more carefully drafted complaint. *See Lewis v. Reyes*, No. 5:22-cv-650-JA-PRL, 2023 WL 3728377, at *1 n.1 (M.D. Fla. May 30, 2023) ("A *pro se* plaintiff generally must be given at least one opportunity to amend his complaint before his case is dismissed with prejudice. Here, however, any amendment would be futile because on the facts asserted by Plaintiff and presented in the video included with the Complaint, all of Plaintiff's claims fail as a matter of law. Thus, it cannot be said that 'a more carefully drafted complaint might state a claim,' and leave to amend need not be given.") (internal citations omitted), *aff'd,* No. 23-12171, 2024 WL 1155813 (11th Cir. Mar. 18, 2024); *see also Swinford*, 2024 WL 4661097, at *10 ("[T]he district court properly concluded that any amendment to [the] claims of excessive force would be futile because the video evidence established no constitutional violation had occurred."); *Lewis v. King*, No. 8:24-cv-1935-TPB-CPT, 2024 WL 4349429, at *3 (M.D. Fla. Sept. 30, 2024) ("Plaintiff's § 1983 claims in Counts 1 and 2 are therefore dismissed with prejudice. … [S]he will not be permitted leave to amend her complaint here because, based on the conclusive video evidence, amendment would be futile.").

On the other hand, though inadequate, Count Four is not foreclosed by clear video evidence. I thus recommend it be dismissed *without* prejudice, which, unlike a dismissal *with* prejudice, does not first require an opportunity to amend by a *pro se* party. *See Brown v. Ivey*, No. 21-10062, 2022 WL 595726, at *2 (11th Cir. Feb. 28,

2022); *Quinlan v. Pers. Transp. Servs. Co.*, 329 F. App'x 246, 249-50 (11th Cir. 2009). I therefore recommend the Motion be granted to the extent that all claims be dismissed, but with such dismissal with prejudice as to Counts One through Three and without prejudice as to Count Four.

## V.   Conclusion

Accordingly, it is **respectfully recommended** that:

1.     The Motion (Doc. 16) be **granted** to the extent that Counts One, Two, and Three of the Complaint be **dismissed with prejudice**, and Count Four of the Complaint be **dismissed without prejudice.**

3.     The Clerk of Court be **directed** to terminate any pending motions and deadlines and close this file.

## <u>Notice</u>

"Within 14 days after being served with a copy of [a] recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations impacts the scope of review by a district judge and by an appellate court. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C); 11th Cir. R. 3-1. "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). "A party failing to object

to a magistrate judge's findings or recommendations contained in a report and recommendation … waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions[.]" 11th Cir. R. 3-1.

**DONE AND ENTERED** in Jacksonville, Florida, on November 20, 2024.

_____
Samuel J. Horovitz
United States Magistrate Judge

Copies to:

The Honorable Wendy W. Berger, United States District Judge

*Pro Se* Plaintiff

Counsel of Record